**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACQUELINE WOMACK, | ) Case No. CV 13-7094-JPR |
|               Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND ORDER |
|       vs. | ) AFFIRMING THE COMMISSIONER |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
|               Defendant. | ) |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed June 11, 2014, which the Court has taken under submission without oral argument.  For the reasons discussed below, the Commissioner's decision is affirmed and judgment is entered in her favor.

**II.   BACKGROUND**

Plaintiff was born on March 14, 1949.  (Administrative

Record ("AR") 38.) She has 13 years of education. (AR 54.) She previously worked as an appointment clerk and an auto-loan representative.[1] (AR 136.)

On July 9, 2010, Plaintiff filed an application for DIB, alleging a disability onset date of June 13, 2009.[2] (AR 117.) Plaintiff claimed to be disabled because of osteoarthritis, history of carpal tunnel syndrome, diabetes mellitus, and obesity. (AR 20.) Her application was denied on December 15, 2010. (AR 57.) Plaintiff requested reconsideration (AR 63), and on April 11, 2011, her application was denied again (AR 64-68).

She then requested a hearing before an Administrative Law Judge. (AR 70-71.) A hearing was held on November 21, 2011, at which Plaintiff, who was represented by counsel, testified. (AR 38-51.) A vocational expert also testified. (AR 46-49.) On December 15, 2011, the ALJ issued a written decision finding Plaintiff not disabled. (AR 15-25.) On February 8, 2012, Plaintiff requested review of the ALJ's decision (AR 14); on August 1, she submitted additional medical evidence for the Appeals Council to review (AR 261-63). On August 7, 2013, the Appeals Council considered the additional evidence, a two-page Residual Functional Capacity questionnaire filled out by Plaintiff's treating doctor in June 2012, but denied Plaintiff's

---

[1] Although Plaintiff listed three previous jobs, including "[s]alesperson," on her disability report (AR 136), at the hearing she testified that she was never a salesperson (AR 48) and that "the only type of work" she had performed was "data entry" (AR 42).

[2] In her disability report, Plaintiff wrote that she stopped working on June 13, 2009, "because of [her] conditions" (AR 135) but testified at the hearing that she stopped because she was "laid off" (AR 40).

request for review.  (AR 1-3.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.  42

U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. § 404.1520(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional

capacity ("RFC")[3] to perform her past work; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. § 404.1520; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

    B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since June 13, 2009, the alleged onset date. (AR 20.) At step two, he concluded that Plaintiff had the severe impairments of "osteoarthritis, history of carpal tunnel syndrome, diabetes mellitus, and obesity." (Id.) At step three, he determined that Plaintiff's impairments did not meet or medically equal any of the impairments in the Listing. (Id.) At step four, he found that Plaintiff was able to perform a full range of light work at all exertional levels. (AR 21.) The ALJ specifically rejected Plaintiff's complaints of pain because she had received only "conservative treatment for joint pain and

---

[3] RFC is what a claimant can do despite existing exertional and nonexertional limitations. 20 C.F.R. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1 diabetes" (id.) and because she was "not consistent in her
2 reports to her medical providers and her allegations" (id.).
3 Plaintiff has not challenged that ruling. (J. Stip. at 3.)
4 Based on the VE's testimony, the ALJ concluded that Plaintiff
5 could perform her past relevant work as an appointment clerk and
6 a data-entry clerk. (AR 22.) Accordingly, he determined that
7 Plaintiff was not disabled. (AR 18.)

**V. DISCUSSION**

  The New Evidence Submitted to the Appeals Council Does Not
  Warrant Reversal

  Plaintiff alleges that the additional evidence she submitted to the Appeals Council renders the ALJ's RFC assessment unsupported by substantial evidence for the period from July 7, 2011, through December 15, 2011, the date of the ALJ's decision. (J. Stip. at 4-6.) Reversal is not warranted.

  A.  Applicable law

  A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ must consider all the medical evidence in the record and "explain in [his] decision the weight given to . . . [the] opinions from treating sources, nontreating sources, and other nonexamining sources." 20 C.F.R. § 404.1527(e)(2)(ii); see also § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (RFC must be "based on all of the relevant evidence in the case

1  record"). In making an RFC determination, the ALJ may consider
2  those limitations for which there is support in the record and
3  need not consider properly rejected evidence or subjective
4  complaints. See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC
5  determination because "the ALJ took into account those
6  limitations for which there was record support that did not
7  depend on [claimant's] subjective complaints"); Batson v. Comm'r
8  of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not
9  required to incorporate into RFC findings from treating-physician
10 opinions that were "permissibly discounted").

11      Moreover, Social Security Administration regulations "permit
12 claimants to submit new and material evidence to the Appeals
13 Council and require the Council to consider that evidence in
14 determining whether to review the ALJ's decision, so long as the
15 evidence relates to the period on or before the ALJ's decision."
16 Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th
17 Cir. 2012); see also 20 C.F.R. § 404.970(b). "[W]hen the Appeals
18 Council considers new evidence in deciding whether to review a
19 decision of the ALJ, that evidence becomes part of the
20 administrative record, which the district court must consider
21 when reviewing the Commissioner's final decision for substantial
22 evidence." Brewes, 682 F.3d at 1163; accord Taylor v. Comm'r of
23 Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011); see also
24 Borrelli v. Comm'r of Soc. Sec., __ F. App'x __, 2014 WL 1492736,
25 at *1 (Apr. 17, 2014) (remand necessary when "reasonable
26 possibility" exists that "the new evidence might change the
27 outcome of the administrative hearing").
28

B. Relevant facts[4]

The medical evidence of record from February 8, 2007, to May 13, 2010, demonstrates that Plaintiff visited Genesis Medical Clinic for routine medical check-ups. (AR 209-33.) Plaintiff's treatment plan consisted of prescribed medication, primarily for diabetes, hypertension, heart disease, and obesity. (Id.)

On December 13, 2010, medical consultant Dr. Walter W. Bell, who specialized in internal medicine,[5] reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment. (AR 234-41.) Dr. Bell noted Plaintiff's diagnoses as carpal tunnel syndrome, diabetes, and obesity. (AR 234.) He determined that she could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk for about six hours and sit for about six hours in an eight-hour workday; and push and pull unlimitedly. (AR 235.) Dr. Bell also noted that Plaintiff's medical records showed that she "denied joint pain, muscle pain, or back pain" and had "no joint restriction"; her "extremities revealed no edema or foot ulcers"; and her respiratory rate and rhythm were normal. (AR 235-36.) Dr. Bell found that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (AR 234-41.) The ALJ gave "significant weight" to Dr. Bell's opinion because it

---

[4] Because the parties are familiar with the facts, they are summarized here only to the extent relevant to the contested issue.

[5] Dr. Bell's electronic signature includes a medical specialty code of 19, indicating internal medicine. (AR 241); see Program Operations Manual System (POMS) DI 26510.089, U.S. Soc. Sec. Admin. (Oct. 25, 2011), http://policy.ssa.gov/poms.nsf/lnx/0426510089; POMS DI 26510.090, U.S. Soc. Sec. Admin. (Aug. 29, 2012), http://policy.ssa.gov/poms.nsf/lnx/0426510090.

was "consistent with the medical evidence of record." (AR 22.)

Dr. Donald Hemphill treated Plaintiff from May 11 to August 4, 2011.[6] (AR 243-58.) On May 11, 2011, Dr. Hemphill noted that Plaintiff's hypertension was in "poor control" and prescribed medication. (AR 249.) On May 27, 2011, he reviewed Plaintiff's lab results; listed her diagnoses as diabetes, hypertension, and high cholesterol; and refilled her medications. (AR 247.) On July 7, 2011, he performed an annual physical exam, reviewed Plaintiff's previous lab reports, and listed Plaintiff's conditions as decreased thyroid functions, arthritis of the knees and right hip, hypertension, diabetes, and high cholesterol. (AR 246.) He listed her medications as Carvedilol,[7] Levothyroxine,[8]

---

[6] Parts of Dr. Hemphill's treatment notes are illegible.

[7] Carvedilol is a beta-blocker used to treat heart failure and high blood pressure. Carvedilol, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a697042.html (last revised Aug. 15, 2013).

[8] Levothyroxine, a thyroid hormone, is used to treat hypothyroidism, a condition in which the thyroid gland does not produce enough thyroid hormone. Levothyroxine, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682461.html (last revised Aug. 15, 2013).

Metformin,[9] Lisinopril,[10] and Pravastatin.[11]  (AR 246; see also AR 243-44, 247 (listing Plaintiff's medications).)  On July 11, 2011, Dr. Hemphill reviewed lab results and prescribed medication.  (AR 244.)  On August 4, 2011, he discussed results of previously ordered tests, prescribed medication, requested a colonoscopy and eye examination, and recommended a return appointment in two months.  (AR 243.)

On December 15, 2011, the ALJ found Plaintiff not disabled. (AR 18-22.)  In doing so, he noted that Plaintiff received only "sparse" and "conservative" treatment from Genesis Medical Clinic and Dr. Hemphill for her allegedly disabling conditions, in the form of medication for joint pain and diabetes.  (AR 21.)  The ALJ gave "significant weight" to Dr. Bell's assessment that Plaintiff could perform work at the medium exertional level "because it [was] consistent with the medical evidence of record."  (AR 22.)  Nevertheless, the ALJ ultimately concluded

---

[9]Metformin is used alone or with other medications, including insulin, to treat type 2 diabetes.  Metformin, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a696005.html (last revised Feb. 15, 2014).

[10]Lisinopril is used alone or in combination with other medications to treat high blood pressure.  Lisinopril, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a692051.html (last updated Sept. 15, 2012).

[11]Pravastatin is a statin used to reduce the amount of cholesterol and other fatty substances in the blood.  Pravastatin, MedlinePlus,  http://www.nlm.nih.gov/medlineplus/druginfo/meds/a692025.html (last revised May 15, 2013).

that Plaintiff was limited to light work,[12] in consideration of her allegations of various limitations. (Id.)

Plaintiff requested review of the ALJ's decision and submitted an additional medical record to the Appeals Council, a two-page check-off RFC questionnaire completed on June 20, 2012, by treating physician Dr. Hemphill. (AR 262-63.) The Council reviewed the new evidence and ordered that it be made part of the administrative record (AR 5) but "found that this information does not provide a basis for changing the [ALJ's] decision" (AR 2).

In the questionnaire, Dr. Hemphill concluded, in contrast to Dr. Bell's RFC assessment (AR 234-41), that Plaintiff could sit less than 30 minutes and stand or walk less than 30 minutes at a time and could sit less than two hours and stand or walk less than two hours in an eight-hour day (AR 262). He found that Plaintiff could rarely lift up to 10 pounds and never more than that. (Id.) Plaintiff could rarely use her hands for handling, pushing, pulling, or fine manipulation and had poor manual and finger dexterity. (Id.) Dr. Hemphill found that Plaintiff could never bend, stoop, squat, crawl, crouch, or kneel and could rarely reach up or forward. (Id.) As to all of these limitations, Dr. Hemphill left blank the spaces in which to write

---

[12] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. "To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." Id.

what the "[l]imitations [were] due to." (Id.)

He also noted in the RFC questionnaire that Plaintiff could not use either foot for operating foot controls because of foot and ankle pain. (AR 263.) Dr. Hemphill found that because of joint pain, Plaintiff could never drive or tolerate exposure to unprotected heights, moving machinery, marked temperature changes, or irritants and could rarely tolerate noise. (Id.) As objective signs of pain, Dr. Hemphill listed "joint deformity," "x-ray," and "muscle spasm." (Id.) He stated that Plaintiff had "major pain [and] limitation of motion of RT hip, RT arm (entire)- RT thumb (no grip)." (Id.) He estimated Plaintiff's pain to be "marked," meaning that it caused "serious limitations in activities." (Id.) Lastly, Dr. Hemphill concluded that July 7, 2011, was the earliest date that such limitations could have existed. (Id.)

### C. Discussion

Plaintiff concedes that the ALJ's characterization of the medical record as "containing sparse treatment" was an "accurate summation of the record as a whole" and thus agrees with the ALJ's determination that Plaintiff was not disabled at any time up to July 7, 2011. (J. Stip. at 5.) Plaintiff argues, however, that the introduction of additional evidence, namely, Dr. Hemphill's questionnaire, effectively created "two discrete periods" in her medical history. (Id. at 5-6.) Plaintiff argues that the second period, running from July 7, 2011, until the ALJ's determination on December 15, 2011, requires a new inquiry from the ALJ and warrants remand. (Id.) For the reasons stated below, it does not.

Remand is not necessary because Dr. Hemphill's two-page questionnaire (AR 262-63) did nothing to undermine either of the ALJ's two stated reasons for rejecting Plaintiff's allegations and finding her not disabled: she had received only conservative treatment and had made inconsistent statements (AR 21-22). See Boyd v. Colvin, 524 F. App'x 334, 336 (9th Cir. 2013) (remand not warranted when new evidence did not "sufficiently undermine[]" ALJ's ruling).

After reviewing the evidence, the ALJ accurately found that Plaintiff's treatment was "conservative in nature" because Dr. Hemphill's treatment notes showed that Plaintiff had only "received medication" to treat her allegedly disabling conditions, and he found "no evidence" that Plaintiff's conditions "caused significant . . . complications." (AR 21.) Dr. Hemphill's questionnaire did not indicate or discuss any new or additional treatment of any kind, conservative or not. (AR 262-63); compare Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (treatment with narcotic pain medication, occipital nerve blocks, trigger-point injections, and cervical-fusion surgery not conservative).

Similarly, Dr. Hemphill's questionnaire did not provide any additional evidence to undermine the ALJ's finding that Plaintiff "[was] not consistent in her reports . . . and her allegations" because she had sometimes denied "joint or muscle pain and any joint restriction." (AR 21 (citing AR 211).) The check-off questionnaire simply stated Dr. Hemphill's conclusions regarding Plaintiff's conditions, with virtually no explanation. (AR 262-63.)

1     Thus, Dr. Hemphill's questionnaire did not render the ALJ's
2 RFC assessment unsupported by substantial evidence.  See Brewes,
3 682 F.3d at 1163.  Indeed, Dr. Hemphill's opinion of Plaintiff's
4 condition was unsupported by his own treatment notes, which
5 contained minimal, largely unrelated findings and showed
6 conservative treatment.  (Compare AR 262-63 (Dr. Hemphill's
7 questionnaire) with AR 243-46 (Dr. Hemphill's treatment notes));
8 see 20 C.F.R. § 404.1527(c)(2)(ii) (in assessing treating
9 doctor's opinion, ALJ may consider "the treatment the source has
10 provided"); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.
11 2001) (ALJ permissibly rejected treating doctor's conclusion that
12 claimant was disabled when it conflicted with, among other
13 things, the doctor's prescribed "conservative course of
14 treatment").  Moreover, medical evidence relevant to the period
15 in dispute consisted of only three treatment notes, dated July 7,
16 July 11, and August 4, 2011, and they contained minimal findings.
17 (See AR 243-46); see also Orn v. Astrue, 495 F.3d 625, 631 (9th
18 Cir. 2007) (factors in assessing treating physician's opinion
19 include length of treatment relationship, frequency of
20 examination, and nature and extent of treatment relationship);
21 accord 20 C.F.R. § 404.1527(c)(2).
22     Additionally, although Dr. Hemphill's two-page check-off
23 questionnaire contained conclusions contradicting the medical
24 evidence of record and Dr. Bell's RFC assessment, it did not
25 provide any explanation to support those conclusions.  (AR 262-
26 63); see Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)
27 (ALJ "need not accept the opinion of any physician, including a
28 treating physician, if that opinion is brief, conclusory, and

inadequately supported by clinical findings"); accord Batson, 359 F.3d at 1195; see also De Guzman v. Astrue, 343 F. App'x 201, 209 (9th Cir. 2009) (ALJ was "free to reject" doctor's check-off report that did not explain basis for conclusion); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227-28 (9th Cir. 2009) (upholding RFC determination when ALJ relied on state-agency physician's opinion over that of treating physician). Indeed, Dr. Hemphill either left blank the questions in the questionnaire where he could explain his conclusions or, as to some limitations, stated that they were based on Plaintiff's alleged joint pain and limitation of motion. (AR 243-58, 262-63.) But the ALJ specifically rejected Plaintiff's claims of disabling pain, a finding Plaintiff has not challenged. (J. Stip. at 3); see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (when ALJ properly discounted claimant's credibility, he was "free to disregard" doctor's opinion that was premised on claimant's subjective complaints). And although Dr. Hemphill cited x-ray, joint deformity, and muscle spasm as "objective" signs of Plaintiff's pain (AR 263), the record contains no x-ray results or notations of joint deformity or muscle spasm (AR 243-58). See Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion).

     Plaintiff nevertheless argues that Dr. Hemphill's

determination that July 7, 2011, was the effective date of her limitations "correlat[es]" with laboratory abnormalities in the record. (J. Stip. at 5.) Dr. Hemphill, however, did not cite any laboratory abnormalities in support of his assessment. (AR 262-63.) Indeed, whereas Dr. Hemphill listed joint pain and limitation of motion as the reason for Plaintiff's restricted functioning (AR 263), the "abnormalities" noted in the lab results arose from, for example, low HDL cholesterol (AR 254); low white and red blood-cell, hemoglobin, hematocrit, and neutrophils levels (AR 253); and elevated A1c, which was "consistent with diabetes" (id.).

Because Dr. Hemphill's opinion does not render the ALJ's RFC assessment unsupported by substantial evidence, remand is not warranted. See Bayliss, 427 F.3d at 1217; Marin v. Astrue, No. CV 11-09331 AJW, 2012 WL 5381374, at *6 (C.D. Cal. Oct. 31, 2012) (declining to reverse when new evidence submitted to Appeals Council "does not alter the conclusion that the ALJ's decision was supported by substantial evidence in the record as a whole").[13]

**VI. CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four

---

[13] Dr. Hemphill's questionnaire was dated June 20, 2012, and stated that Plaintiff's limitations began at the earliest on July 7, 2011. (AR 263.) Nothing in it, however, stated that those limitations "[could] be expected to result in death or [] [have] lasted or [could] be expected to last for a continuous period of not less than 12 months," which Plaintiff must show to be considered "disabled" for purposes of receiving Social Security benefits. See 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

```
1  of 42 U.S.C. § 405(g),[14] IT IS ORDERED that judgment be entered
2  AFFIRMING the decision of the Commissioner and dismissing this
3  action with prejudice.  IT IS FURTHER ORDERED that the Clerk
4  serve copies of this Order and the Judgment on counsel for both
5  parties.
```

DATED: July 24, 2014

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[14]This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."